## KELL, ADMINISTRATOR v. SOUTHERN RAILWAY COMPANY ET AL.

[No. 8,889. Filed December 11, 1914.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Railroad Employe.—Liability of Master.*—Under a complaint alleging that plaintiff's decedent was employed as a flagman on defendant's east bound freight train, which had taken a siding to allow a west bound passenger train to pass, and that such siding was short, so that the rear cars remained on the main line until the passenger train passed to a point west of the east end of the switch, after which the freight train pulled in on the siding and left the main track clear; that to protect the rear cars from any east bound train decedent had gone a half mile to the rear; that after the main track was cleared, and on being recalled by his engineer, decedent started to walk back and was struck by the west bound passenger train; and charging that decedent's death was caused by the violation by the engineer of the passenger train of certain rules of defendant, which provided that when a train was stopped under circumstances similar to those existing at the time, it was the flagman's duty to go back to stop trains from the same direction and remain until recalled; and if a passenger train was due in ten minutes, must remain until it arrived; that a train should not start without proper signal, etc.; no liability was shown, since in view of the rules set out there was no duty on the part of the engineer of the passenger train to wait until decedent returned and closed the siding, and no violation of such rules on his part was disclosed. pp. 312, 318.

2. RAILROADS. — *Rules for Employes.* — *Construction.* — Rules promulgated by a railroad company for the use of its employes should be construed not only with reference to the interests of the company and its employes, but also with reference to the great commercial enterprise which railroads are intended to subserve, and with reference to the interests, welfare and safety of the public. p. 318.

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by Landon Kell, as administrator of the estate of Pernal Kell, deceased, against the Southern Railway Company and another. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*James B. Gamble, Lucius C. Embree* and *Morton C. Embree,* for appellant.

*Alex P. Humphrey, Edward P. Humphrey, John D. Welman* and *Thomas Duncan,* for appellee.

HOTTEL, C. J.—On January 1, 1909, the appellee was a railway corporation organized in the commonwealth of Virginia and engaged in carrying passengers and freight over and on its line of railroad operated in and through the states of Kentucky, Illinois and Indiana. Appellant's decedent, Pernal Kell, on said day was employed by appellee and by it assigned to the work of a flagman on its freight trains. Decedent continued to work for appellee in this capacity up to and including November 23, 1909, when, while so employed and engaged as such flagman on one of appellee's east bound freight trains then being operated over appellee's road through the county of Marion in the state of Illinois, he received injuries which resulted in his death. On the date last mentioned appellee also had in its employe one Hugh Funk who was a locomotive engineer and who as such engineer had charge of and was operating for defendant the locomotive engine attached to one of appellee's west bound passenger trains which was then being operated over appellee's road through Marion

County, Illinois. These two trains were each engaged in interstate transportation.

In the operation of these two trains in opposite directions it became necessary for the freight train to take the siding or switch in order that the passenger train might pass on and over the main track. The siding which such freight train was required to take was too short to admit the entire train and it pulled into the siding going east thereon to the east end of the siding and there remained, with its rear cars extending west on the main line, until the passenger train passed on the main line to a point west of the east end of the switch when such freight train then passed on east, over the main line until the rear cars thereof had passed into the siding and left the main track west of the siding clear for the passage of the passenger train. To protect the rear end of the freight train from any train following in the same direction, decedent as such flagman and rear brakeman was ordered and required by the defendant to leave his train and go back west on the main line to signal and flag any east bound train, and in the proper discharge of this duty or work decedent was required to remain on such main line of appellee's road at a point about a half mile west of the rear end of his train until he was signalled by the engineer of his train that the rear end thereof had been pulled into the siding leaving the main line clear for the passage of such west bound passenger train. On the occasion in question decedent had gone west on the main line of appellee's road in the discharge of the duties so required of him as such flagman and had performed the duty of placing the signals and had been signalled to return, and while so returning and before reaching the west end of the side track which his train had taken was run over and fatally injured by the passenger train. The injury occurred in the nighttime, and appellant's decedent could not tell that the passenger train was moving towards him because of

the glare of the headlight which blinded him. Appellant filed a complaint in the court below, charging the facts to be substantially as above stated and charging that Pernal Kell's death was caused by appellee's negligence and asking damages on account thereof.

A demurrer filed to this complaint was sustained. Appellant refused to plead further, and electing to stand on his complaint, judgment was rendered against him for costs, from which judgment he appeals and assigns as error in this court the ruling on said demurrer.

The complaint sets out at great length all the facts connected with the operation of the two trains and alleges that appellee caused to be printed in book form certain rules, which book it placed in the hands of all of its employes, including decedent and said Funk, engineer on the passenger train; that appellee required the observance of such rules on the part of all of its employes. A great number of these rules are set out at length in the complaint, the purpose thereof and the theory of the complaint being that such rules required Funk, the engineer on the passenger train, to delay the movement of his train on the main line west of the siding which the freight train had taken until decedent had returned and closed the switch connecting such siding with the main line of appellee's road, and that because of the engineer's negligence in proceeding with his train west over the main line of appellee's road in violation and disregard of said rules decedent's death resulted.

The complaint is very lengthy and, in view of appellant's statement in his brief of the question presented by the appeal, it is not necessary that we set it out in our opinion. This question is stated by appellant as follows: "This record presents but one question, and this question involves an interpretation of the rules promulgated by the appellee, Southern Railway Company, for the guidance of its employes in the performance of their duties." Here follows a statement of the facts substantially as above set out, after which

follows the statement that "The appellant contends, under the rules pleaded in the amended second paragraph, (1) that it was the duty of the flagman to close the switch; and (2) that it was the duty of those in charge of the passenger train not to proceed westward until the flagman had closed the switch and given the proper signal. Whether the paragraph states a cause of action depends upon whether this is a proper interpretation of the rules."

The rules on which appellant relies as supporting its contention are as follows:

"85. A train must not start until the proper signal is given.  *  *  *

87. A train failing to clear the main track by the time required by rule, must be protected as provided in Rule 99.

88. At meeting points between trains of the same class the inferior train must clear the main track before the leaving time of the superior train and must pull into siding when practicable. If necessary to back in, the train must first be protected, as per Rule 99, unless otherwise provided.

99. When a train is stopped at an unusual point or is delayed at a regular stop over three minutes, or when it fails to make its schedule time, the flagman must immediately go back with danger signals to stop any train moving in the same direction. At a point one-half of a mile (or 18 telegraph poles) from the rear of his train he must place one torpedo on the rail, on engineman's side; he must then continue to go back at least three-fourths of a mile (or 27 telegraph poles) from the rear of his train and place two torpedoes on the rail, ten yards apart (one rail length) when he may return to a point one-half of a mile (or 18 telegraph poles) from the rear of his train, and he must remain there until recalled; but if a passenger train is due within ten minutes, he must remain until it arrives. When he comes in, he will remove the torpedo nearest to the train, but the two torpedoes must be left on the rail as a caution signal to any following train. If the delay occurs upon single track and it becomes necessary to protect the front of the train, or if any other track is obstructed, the front brakeman must go forward and use the same precautions. If the front brakeman is unable to leave

the train, the fireman must be sent in his place. On descending grades, or during blinding storms or fog, the flagman must go much farther than the distance named above as will insure absolute safety, placing the torpedoes at relative greater distances from the obstructions.  *  *  *

104. Switches must be left in proper position after having been used. Conductors are responsible for the position of the switches used by them and their trainmen, except where switch-tenders are stationed. A switch must not be left open for a following train unless in charge of a trainman of such train.

104½. When a train backs in on a siding to meet or be passed by another train, the engineman, when his engine is in the clear, must also see that the switch is properly set for the main track. Enginemen must know that switches are properly set before they pull in or out of siding or other tracks. At meeting or passing points, the employe attending switch will after locking it for the main track, take a position not less than 40 feet from the switch stand—across the track from it when practicable—until the expected train has passed.  *  *  *

502. They (enginemen) are jointly responsible with the conductor for the movement and protection of their trains in accordance with the rules; and while they (enginemen) must obey all proper orders by the conductors or others, as provided by the Rules, they (enginemen) are individually responsible for the observance of rules relative to their duties, and must decline to obey any order by the conductor or any other person which involves the violation of such rules, or peril to persons or property.  *  *  *

589. It is their (flagmen's) especial duty to protect the rear of their trains in strict accordance with the Rules, and they must allow nothing to interfere with the prompt and efficient discharge of this duty.

590. They (flagmen) must obey the signal from the engineman prescribed by the Rules, and they must never wait for such signal or for orders from the conductor when their trains need protection.  *  *  *

602. In other than their special duties, they (flagmen) will be governed by the rules for passenger and freight brakemen, as the case may be.  *  *  *

636. They (passenger brakemen) must throw all switches required to be used by their trains where no

switchmen are employed or in the absence of the switch-
men.   *   *   *

662.   They (freight brakemen) must manipulate the
brakes make couplings, switch cars, load and unload
freight, throw the switches to be used by their trains,
except where switchmen are employed, or on the absence
of the switchmen, and perform such other duties in the
management and protection of their trains as may be
assigned to them by the conductor.''

There is no contention that appellee's negligence consisted
in anything other than the failure of its engineer to observe
said rules, in the operation and movement of the passenger
train.   There is no claim that the complaint proceeds on the
theory that appellee through its engineer knew that decedent
was in a situation of peril when he proceeded with his train
on the main track west of the switch, or that, on account of
the work required of decedent, the engineer should have
known that decedent might be in such situation of peril, and,
ignoring such knowledge, actual or constructive, negligently
moved the passenger train towards and over him.   We make
these suggestions in order that the real and only questions
presented by appellant's brief may not be confused with
any other question and that this opinion may be understood
as deciding only such questions.

There are in reality two questions primarily involved in
the appeal:   (1) Did the rules above quoted fairly and
reasonably construed, require the engineer on the passenger
train to wait before proceeding west on the main line for
the decedent to return to the west end of the side track
occupied by his train and close the switch used by his train?
(2) If such fair and reasonable construction of the rules
required the engineer of the passenger train to so wait, can
it be said that the failure to observe such rules, and the
movement of the train in violation thereof, though negligent,
was the proximate cause of decedent's injury and death?
A negative answer to either of these questions requires an
affirmance of the judgment below.

In construing the rules we should not lose sight of the fact that all such rules should be construed, not alone with reference to the interests of the railroad company or those employed by it in the operation and management of its road and trains, but such rules should be construed also with reference to the great commercial enterprise which such roads are constructed to subserve, and with reference to the interests, welfare and safety of the public who must necessarily patronize and depend on them for safe conveyance of person and property. When this rule of construction is applied, we think there can be but one answer to the first question above. In so far as said rules relate to the opening and closing of switches, it is hardly reasonable to suppose that an anticipated danger to appellee's employes alone suggested or prompted their making; but on the contrary, the company in promulgating such rules must have had in mind the efficient and prompt operation of its trains and the preservation of their safety and the safety of the passengers and traffic thereon as well as the safety of its employes on its tracks. In order 'that its trains on both the main track and the side track and the passengers and property on such trains, and its employes on its trains and tracks, might be protected against damage and injury from collision resulting from open switches they are required to be closed, or, if left open, some one must remain in attendance. It seems to us that Rule 99, *supra,* clearly applies and controls the facts here shown, and that, under any reasonable construction of it, the only duty imposed on decedent when he was sent back west on the main line, related to trains moving in the same direction as his own. He was sent back "with danger signals to stop any train moving in the same direction," and after placing his signals was required "to return to a point one-half of a mile from the rear of his own train and there

remain until recalled'', evidently by the engineer of his own train. Such recall signal would not, of course, be given by such engineer (and the complaint in this case avers that such engineer recalled decedent), until the rear car of his freight train had entered the side track and cleared the main track. So, if appellant's construction of said rules be adopted, the passenger train, although the main track had been cleared, would have been required to wait until the decedent could walk the distance of one-half of a mile plus the distance the rear end of his train extended west of the switch and then close the switch and take his place opposite the switch stand as provided in Rule 104½, *supra,* and then give the signal to such passenger train to proceed, as provided in Rule 85. Such a construction, it seems to us, is not consistent with the purpose and end, before indicated, to be attained by the promulgation of such rules. It would seem that under Rule 104½, *supra,* the engineers of the passenger train and freight train were each made responsible for the closing of such switch, and when it became necessary, either to delay such passenger train or operate such switch, the switch then became one to be used by the passenger train and hence under the rules could be properly closed by the passenger brakeman. When read in their entirety we see no material conflict in the rules, nor do we think that, under them, it was the duty of the engineer on the passenger train to delay the movement of his train west over the main line, until the appellant's decedent returned and closed the switch, and gave the signal for such movement, or that by so moving the train west over the main line such engineer violated such rules. It follows therefore that the complaint shows no negligence on the part of the engineer of the passenger train in the movement of his train over the main line at the time it ran over appellant's decedent and hence that no error resulted from the action of the trial court in sustaining the demurrer to the

complaint. This conclusion renders unnecessary a consideration of the second question above indicated.

Judgment affirmed.

NOTE.—Reported in 107 N. E. 19. As to accidents as evidence of negligence in respect of railroads, see 20 Am. St. 490. See, also, under (1) 26 Cyc. 1395; (2) 26 Cyc. 1162.